WYCKOFF, SEAMANS & BENEDICT *v.* BISHOP.

1. SALE—AGENCY—SET-OFF.

A purchaser of typewriters at an agreed price, to be resold by him, cannot interpose by way of set-off, in an action on a bond given by him on appeal from a judgment against him for machines purchased, a claim for work performed in adjusting and aligning the machines, where there was no agreement that he should be paid therefor, and the seller immediately repudiated any liability on being notified of the claim.

2. SAME—EXCLUSIVE RIGHTS—COMMISSIONS.

An agent for the sale of typewriters, who, under his contract, was to receive the benefit of all sales made in a given State, is not entitled to commissions on the sale of a machine by the maker to a purchaser in another State, merely because it is shipped by the purchaser to a branch office within the agent's territory.

Error to Wayne; Hosmer, J. Submitted October 15, 1897. Decided December 21, 1897.

Debt by Wyckoff, Seamans & Benedict against A. Cushman Bishop, as principal, and Robert E. Hull and C. Edward Richmond, as sureties, upon an appeal bond. From a judgment awarding a set-off to defendant Bishop, plaintiff brings error. Reversed.

*O. M. Leonard* (*Julian G. Dickinson*, of counsel), for appellant.

MOORE, J. The plaintiff in this cause, a corporation, sued defendant Bishop upon a claim assigned to it by the firm of Wyckoff, Seamans & Benedict against Bishop, and obtained judgment. The case was appealed to the Supreme Court by Mr. Bishop, and the judgment of the court below was affirmed. *Wyckoff, Seamans & Benedict* v. *Bishop*, 98 Mich. 352. When Mr. Bishop appealed the case, he gave a bond signed by himself as principal and by Mr. Hull and Mr. Richmond as sureties, conditioned, among other things, to pay the judgment and costs if the judgment of the court below was affirmed. The judgment and costs have not been paid. Plaintiff brought this action upon the bond for the amount of the judgment and costs. Defendants Hull and Richmond interposed the plea of the general issue. Defendant Bishop pleaded the general issue, and gave notice of set-off. The items of set-off are as follows:

| | |
|---|---|
| To adjusting and aligning 572 typewriting machines from time to time between May 1, 1889, to October 31, 1891 | $572 00 |
| To commission on typewriter sold G. & M. Transportation Co. | 34 00 |
| To check | 51 45 |
| Interest on the above amounts from March 21, 1892. | |

The plaintiff asked the court to direct a verdict in its favor for the amount of the judgment and costs recovered in the case which was here. The court instructed the jury that they must find a verdict for the plaintiff for the amount of costs recovered in that case, but that they might set off against the judgment defendant Bishop's claim of set-off, if they found he had established it by the proof. The jury returned a verdict for the plaintiff for the amount of costs, but wiped out the judgment recovered by it by allowing that as the amount of the set-off. Plaintiff appeals.

No argument or brief has been made or filed in this court on the part of the appellee. The record discloses that prior to 1891 Mr. Bishop made an arrangement with the firm of Wyckoff, Seamans & Benedict to sell the

Remington typewriting machines and supplies, he buying them outright at an agreed price f. o. b. The first item in the transaction litigated when the case was here before was a shipment made to him May 2, 1891. Monthly reports were made to him. The last shipment was made to him December 11, 1891, and the last remittance made by him to them was $51.45, sent March 21, 1892. Wyckoff, Seamans & Benedict claimed there was due them at that date $320. This not being paid, suit was brought upon it, and it was for that claim that judgment was rendered in their favor in the suit which was appealed here.

As already stated, Mr. Bishop bought the machines at an agreed price. His item of set-off is a charge he now makes for work done on the machines to make them fit to put upon the market. The price made to him was for the machines in New York, and he paid the freight from there. The only proof in the case which has any bearing upon his right to recover for the work done upon the machines is his testimony, as follows:

"In 1890, at their office in New York, I had a conversation with them with regard to my claim against them for putting these machines in order. They brought a machine out of the packing room, had it opened in my presence, and I called their attention to the defective manner in which they sent out their machines. The assistant foreman of that department of the factory was there. They were very glad of it, they said. I called the attention of Mr. Seamans more particularly to defects in the machines they were sending out, and illustrated it by this machine that was taken from their packing room. I said to them also, 'Gentlemen, you owe me over a year's salary for the time I have already expended in putting your machines in order that they would satisfy customers.' Mr. Seamans says: 'A year's salary; that is not much,— $250.' 'Well,' I said, 'I am not working for that sum at this time.' The conversation went on, and he turned to the foreman, and said, 'If Mr. Bishop will draw upon us for his expenses in this trip to New York, we will honor the draft.' 'No,' I says, 'I will not do that, gentlemen. I will tell you what you do for me. You make and present me with one of those inlaid mother-of-pearl machines, and we will call this trip to New York square.'

They sent me such a machine, a machine which retailed at $125, for my trip to New York, and calling their attention to these, and said that they would see that the factory sent out the machines in better condition. No part of that $572 has been paid."

In response to the monthly statements of account sent him, he made no claim that he was entitled for aligning machines. He testified that he kept a tally of them upon the blotter, and that in March, 1892, he made a charge for aligning 572 machines, $286, and sent a statement of the amount to the firm. They at once repudiated any liability for this amount. Giving to this testimony the fullest weight possible in favor of Mr. Bishop, we do not think it establishes a claim against the firm that can be used by way of set-off in this proceeding. See *Shipman* v. *Coryell*, 105 Mich. 395.

As to the item of $34 for commission, it is Mr. Bishop's claim that, because this machine was sold, and was brought to Benton Harbor, in this State, and used, he is entitled to the commission. His testimony is:

"I was to have the State of Michigan as exclusive territory, and nobody to sell in my territory without my receiving a benefit." "The thirty-four dollar item is a typewriter sold the Graham & Morton Transportation Company, and delivered at Chicago. Chicago was not in my territory, but the Graham & Morton Transportation Company had their office at Benton Harbor, in this State, and the machine went into that office. They had no right to sell in my territory. I got onto these facts at the time, and charged them my commission on that machine, and insisted upon it."

As soon as any claim was made for this commission, the firm denied Mr. Bishop's right to it, and in the letter sent by Mr. Bishop in which he claims this commission he states that the Graham & Morton Transportation Company own a dock at Chicago, and have a freight and ticket office there. It is difficult to see upon what theory Mr. Bishop can claim he was entitled to a commission upon

this machine. It was sold in Chicago, to a corporation having a freight and ticket office there; and by his own statement it was not such a sale as should inure to his benefit.

The item of $51.45 was allowed as a credit to Mr. Bishop in the other case, and manifestly he should not have credit for it twice.

It is not necessary to consider the other assignments of error. The trial court should have directed a verdict in favor of the plaintiff for the amount of the judgment and costs in the former case, with interest.

Judgment is reversed, and new trial ordered.

The other Justices concurred.