**William K. Marshall, Appellee, v. Canadian Cordage and Manufacturing Company, Limited, Appellant.**

**Gen. No. 15,493.**

1. AGENCY—*when principal liable for violation of exclusive grant.* Where there is an exclusive agency and the principal violates the contract by making sales directly and knowingly within the exclusive territory, he is clearly liable.

2. MEASURE OF DAMAGES—*in action for selling by principal within exclusive territory.* If a principal sells merchandise within territory which it has exclusively granted to an agent upon commission it is liable to such agent for the commissions which would have accrued to him if he had made the sale in person.

Bill for accounting. Appeal from the Superior Court of Cook county; the Hon. WILLARD M. McEWEN, Judge, presiding. Heard in this court at the March term, 1909. Affirmed. Opinion filed March 16, 1911.

SHOPE, ZANE, BUSBY & WEBER, for appellant.

GEORGE W. BROWN and J. KENTNOR ELLIOTT, for appellee.

MR. JUSTICE SMITH delivered the opinion of the court.

Appellee filed a bill in the Superior Court of Cook county, setting out an agreement entered into with appellant November 21, 1905, whereby appellee was made general agent and sales manager of appellant,

with headquarters at Chicago, for one year from December 1, 1905, for the sale of binder twine on a commission basis, "covering the States of Minnesota, North Dakota, South Dakota, Wisconsin, Iowa, Nebraska, Illinois, Missouri, Kansas, Oklahoma, Manitoba and the North West Canadian Provinces."

The contract provided: "The said second party" (appellee) "shall on December 1, 1905, open an office at Chicago and conduct the business in the name of the first party" (appellant) "and all sales of the first party" (appellant) "in said territory shall be handled through the said office at Chicago." The appellee was to bear all the expenses in maintaining said agency and selling twine and was to keep in stock at Chicago a small quantity of twine to fill small orders, but the greater portion sold was to be shipped in carload lots direct from appellant's factory at Peterborough in the Province of Ontario. The bill alleges that the appellant had sold large quantities of twine in his said exclusive territory and had not reported same to or paid appellee his commission on same, and prayed an accounting. The appellant answered, denying it had sold twine directly or through other agencies in the territory covered by said contract. Replication was filed and on a hearing by the chancellor there was a finding and a decree that there was due appellee the sum of $583.80, with interest at the rate of five per centum per annum from May 20, 1907.

Two cross-errors have been assigned by appellee. The first is that the court erred in finding that the commission due appellee on a sale of a large order of twine to Montgomery Ward & Co. was not within the said contract, but controlled by a special contract entered into by the parties pertaining to said sale. It appears to us that the chancellor was correct in holding that the greater weight of the testimony showed that the parties subsequently entered into a special contract and agreed upon a certain commission to be paid ap-

116    APPELLATE COURTS OF ILLINOIS.

Marshall v. Canadian Cordage and Mfg. Co., 160 Ill. App. 114.

pellee on the sale to Montgomery Ward & Co., and accordingly allowed the proper amount on the accounting. The second cross-error is that there was an improper credit given appellant, for twine sold, but afterwards returned, but if credit be given on same the computation was wrong. On the hearing reference was made to conditional sales where the parties reserved the right to return the twine, and the computation was made at the rate of five per cent commission on the total amount of twine returned. It is claimed by the appellee that if any allowance is to be made on twine returned, a portion thereof should be figured on a three per cent commission instead of five per cent, which would make a difference of $80.79 in favor of the appellee. Although counsel have indulged in an abundance of abstracts in this case, we are unable, after a careful examination of all three abstracts, to discover which sales, if any, were conditional, or which shipments of twine were returned on which the appellee was not allowed a commission. In such a state of the record we are not able to determine this question.

The main controversy in this case was over the Massey-Harris Company contract. The essential facts pertaining to said contract were not in controversy. The Massey-Harris Company was a corporation manufacturing implements located in Toronto, Province of Ontario, with branch houses and agencies in said Province, the Canadian Northwest, Europe and Australia. Massey-Harris Company did not make twine, but had done a binding twine business since 1885 by buying from some manufacturer and selling the same as Massey-Harris Company twine through its various branches and agencies, and had purchased twine from the appellant for three seasons prior to 1905-6, but not for the season of 1904-5. The appellant began negotiations with the Massey-Harris Company in September, 1905, which culminated in a contract with said company January 19, 1906, for a large amount of

twine to be tagged and shipped by appellant from its factory as directed by Massey-Harris Company.   The Province of Ontario was not within the territory specified in appellee's contract.   The principal place of business of both of said companies was in said Province; their contract of January 19, 1906, was made therein; the directions by Massey-Harris Co. pertaining to shipments under said contract were given therein, and the shipments on said directions were made by appellant from their factory in said Province; at the time of entering into said contract appellant had no information where the twine so purchased would be shipped; appellant did tag and ship under the directions of Massey-Harris Company, about three hundred and sixty tons of twine into the territory specified in the contract with appellee.

Appellee had sold twine for about sixteen years and had a large personal acquaintance with dealers and jobbers throughout the territory covered by his contract, which was substantially the great wheat growing territory of North America.   Immediately on entering into the contract, appellee had opened an office in Chicago, engaged office help, traveling men, and industriously prosecuted the business of selling appellant's twine.   Appellee called upon the Massey-Harris Company agent at Winnipeg early in January, 1906, and learned that negotiations were then pending between appellant and Massey-Harris Company, and recommended appellant's twine and so notified appellant by letter, but never made further mention of same until after he filed his bill.   The court found, and we think properly, that appellee had nothing to do with making the sale to Massey-Harris Company.

The season for selling twine begins in January and continues until June.   April 9, 1906, appellant wrote appellee in part: "There is no use of your spending a lot of money traveling around the country and our being unable to fill the orders when they come in here."

April 18, 1906, "in part owing to our output being fully sold up, we are considering the matter of calling you in. * * * We feel that this is going to crowd us very much to fill the orders we now have on hand."

Appellant also claims that the appellee converted two certain collections to his own use and filed the bill, not in good faith, but to gain time. While it may be that the conduct of appellee was not in all respects commendable, yet in the accounting the two collections so made were charged to appellee, and the question is: Was the learned chancellor right in holding that under all the circumstances the appellant should pay to the appellee the commissions on the twine shipped under the Massey-Harris Company contract into the territory specified in the contract with appellee? The question is not, by any means, free from difficulty. The appellant made some sales within appellee's territory, and each time gave appellee credit for his commissions thereon. It seems clear that from the contract and the construction of it by the parties, the territory was exclusive, and counsel for appellant in their brief state that the clear intent of the parties was that appellee should have a commission on all sales made in said territory, whether made by him or the company direct.

It is not claimed that the Massey-Harris Company contract was a fraud or a subterfuge to evade payment of commissions, but it seems to be conceded that said contract was made by appellant, supposing it had a right to make same without concern as to where the said twine was to be shipped. Should a court of equity hold that under the circumstances the appellant could do indirectly what it had no right to do directly?

The appellant cites and relies on four cases: Gilbert v. Coons, 37 Ill. App. 448; LaFavorite Rubber Mfg. Co. v. Channon Co., 113 Ill. App. 491; Roberts v. Minneapolis Threshing Machine Co., 67 N. W. Rep. 607; Wyckoff, Seaman & Benedict v. Bishop, 115

Mich. 414. On a careful examination of these cases, we think none can be held decisive of the question in the case at bar. Where there is an exclusive agency and the principal violates the contract by making sales directly and knowingly within the exclusive territory, he is clearly liable. The question of damages, however, is not so well settled. It appears to us that there is a distinction between a contract creating an agency with an exclusive right for the sale of goods within a certain territory on a commission, and a contract giving a party an exclusive right of purchase and resale of goods for a certain territory. In the first case if there be a breach of the contract by the sale of goods in the agent's territory, the damages are fixed by the contract; in the other case, the damages, if any, are to be proven under the rule announced in LaFavorite Rubber Mfg. Co. v. Channon Co., *supra,* and cases there cited.

In Cincinnati Gas Co. v. Western Siemens Co., 152 U. S. 200, one of the parties contracted to sell exclusively to the other party for use in a designated territory certain patented articles, and agreed that it "will not knowingly sell or permit other parties to sell for use in said territory" the said articles. The testimony showed that sales were made by the plaintiff within the exclusive territory, but inadvertently and in ignorance that the same were within said exclusive territory. The Circuit Court held that the sales were made inadvertently and in ignorance of the fact that they were within the exclusive territory, yet they were in direct violation of the terms of the contract, and therefore gave a right to damages. It will be observed that the provision of the contract was that the party would not "knowingly sell," yet the Supreme Court approved the rulings of the Circuit Court.

In Garfield v. Peerless Motor Car Co., 189 Mass. 395, the plaintiff was the exclusive agent for the sale of defendant's cars in Worcester and vicinity. Orndorff, a resident of Worcester, while temporarily re-

siding at Gloucester, purchased a car at the branch office of the defendant company at Boston and the car was delivered to Orndorff at Gloucester. The court held plaintiff was entitled to his commission and said: "The defendant's first contention is that the sale to Orndorff was outside the plaintiff's territory because the contract of sale was made in Boston and the car sold was delivered in Gloucester. His position is that the place where the sale is made, not the residence of the purchaser, is the test. But we do not think that it is so. It is manifest that the contract contemplates that persons buying cars or supplies shall buy them in the territory in which they belong. It is expressly provided that if the agent receives inquiries from territory other than his own, he shall refer them promptly to the defendant. This, coupled with his appointment as exclusive agent for Worcester and vicinity, implies that all inquiries from Worcester and vicinity shall be referred to him."

In the case at bar it is manifest that the contract contemplated that all the twine of the Cordage Co. sold in the territory specified in the contract with Marshall should be sold and the business transacted in the name of the Cordage Co. by its agent Marshall, and that he should be paid a commission on all said sales.

In Thompson-Houston Electric Co. v. Berg, 10 Texas Civil Appeals, 200, Berg claimed commissions for goods sold in the territory for which he was exclusive agent. On one item of more than five thousand dollars it appeared Berg had nothing to do with making the sale. The court held he was entitled to compensation therefor under the contract giving him an exclusive agency and also said, p. 218: "That the terms of the sale were agreed upon outside of the State of Texas would not, in our opinion, militate against appellee's right to his commissions."

It appears that the test is not necessarily where

appellant entered into the contract with Massey-Harris Company, or where the goods were delivered, or even the intention of not violating the terms of the contract with appellee. We conclude that under all the circumstances of the case at bar, the controlling fact is the knowledge of appellant that the destination of the twine, or the larger part thereof, sold Massey-Harris Company, was to be, and in fact was, shipped by appellant to points within the exclusive territory covered by its contract with appellee.

The chancellor who heard the case in the Superior Court in giving his decision stated that the Cordage Co. knew that the twine was going into Marshall's territory, and that the agency there was an exclusive one, and because some of the twine sold the Massey-Harris Company would not go into the said territory, that would not excuse them. It is true the testimony is that the appellant had no information at the time of signing the Massey-Harris contract to what points the twine so sold would be shipped, yet it had notice that one of the agencies of Massey-Harris Company within appellee's territory had been consulted about said twine and its quality, and from its previous dealings, experience and knowledge of the extensive business of Massey-Harris Co. throughout appellee's territory it would seem that the appellant must have known that the Massey-Harris Co. would in the usual course of events, sell and ship a large amount of said twine within the territory covered by appellee's contract. From the evidence there can be no other reasonable conclusion. We therefore think that the appellant when entering into the contract with the Massey-Harris Co. should have in some way protected appellee, but not choosing so to do, should, under all the facts and circumstances of the case, be held liable, and the decree of the Superior Court will be affirmed.

*Affirmed.*