CHARLES J. WIER & another *vs.* AMERICAN LOCOMOTIVE COMPANY & others.

Suffolk.    March 20, 21, 1913. — June 18, 1913.

Present: RUGG, C. J., MORTON, LORING, SHELDON, & DE COURCY, JJ.

*Contract,* Construction. *Equity Pleading and Practice,* Findings of trial judge. *Damages,* In contract. *Automobile. Equity Jurisdiction,* Waiver, Laches, Damages. *Words,* "Automobiles."

In a suit in equity by an automobile dealer against an automobile manufacturer, founded on the alleged breach of a contract in writing, by which the defendant gave the plaintiff the exclusive right to sell the defendant's automobiles in certain counties of the Commonwealth and the defendant agreed not to sell automobiles within that territory except to the plaintiff, the breach of contract relied upon by the plaintiff was the sale by the defendant to a third person of certain taxicabs in the designated territory within the period of the contract, and the defendant contended that these sales were not in violation of the contract because it was not intended by the parties that the word "automobiles" as used in the contract should include taxicabs. It appeared that before the contract was made the defendant never had manufactured taxicabs commercially, but that about the time of the making of the contract the defendant was considering plans and making experiments with a view to the manufacture and sale of taxicabs, and that while the contract was in force the defendant by a special arrangement sold six taxicabs on which it paid the plaintiff a commission. On all the evidence presented, the trial judge, after stating that the question was a close one, found as a fact that the word "automobiles" as used in the contract included taxicabs and was so understood and intended by the parties. *Held,* that this finding of the judge, who saw and heard the witnesses, was not plainly wrong and must stand.

In the same suit in equity the trial judge found, in regard to the defenses of waiver and laches, that, although it was contemplated by the parties that taxicabs were included in the word "automobiles," the defendant's manager did not expect to be called upon to pay commissions on sales of taxicabs, believing that, on account of the cordial and friendly relations that existed between himself and the manager of the plaintiff, the plaintiff's manager would be induced to waive the plaintiff's right to commissions on such sales, and, on conflicting evidence, found that, although the plaintiff had made no attempt to collect commissions on sales of taxicabs by the defendant before the bringing of the suit, yet neither the plaintiff nor its officers or agents ever had waived its right to such commissions. He also found, in view of the friendly relations of the parties and all the evidence in the case, that the plaintiff was not guilty of laches in the enforcement of its claim against the defendant. *Held,* that it could not be said that these findings were plainly wrong.

In a suit in equity by an automobile dealer against an automobile manufacturer founded on the breach of a contract in writing, whereby the defendant made

the plaintiff the exclusive agent for the sale of its automobiles within a certain territory and agreed not to sell its automobiles within that territory except to the plaintiff, it appeared that the defendant committed breaches of the contract by selling to outside persons a certain number of taxicabs within the designated territory while the contract was in force, and that the plaintiff was entitled to recover from the defendant a commission on such sales. The list price of these taxicabs as fixed by the contract between the plaintiff and the defendant was $3,350 each, and the plaintiff was entitled to receive a commission of twenty per cent on the list price on all sales made by it. The defendant had sold the taxicabs in question for $2,600 each. The customers to whom they were sold were introduced by the plaintiff. *Held*, that the defendant was precluded from raising the question whether the plaintiff could have made the sales of the taxicabs if the defendant had not made them, that the defendant had no right as against the plaintiff to sell its automobiles in the designated territory below the list price to which the plaintiff was bound, and that the plaintiff was entitled to recover its usual commission of twenty per cent upon the list price of the taxicabs sold by the defendant, diminished by the amount of the expense which the plaintiff would have incurred if it had made the sales.

DE COURCY, J. It is not now in dispute that the real parties in this case are the Park Square Automobile Station, a Maine corporation herein referred to as the plaintiff, and the American Locomotive Company, a New York corporation hereinafter referred to as the defendant. The question involved in the trial was whether the plaintiff is entitled to damages, and if so how much, on account of an alleged breach of a certain contract, whereby the plaintiff was given the exclusive right of sale of the defendant's automobiles in certain counties of Massachusetts for a given period, and the defendant agreed not to sell such automobiles within that territory except to the plaintiff. The contract was executed on January 1, 1908, between the plaintiff and the American Locomotive Automobile Company, which later was merged in the defendant company, and the defendant recognizes the contract as binding upon it. The breach complained of is the alleged sale in Boston by the defendant itself of fifty taxicabs to the Taxi-Service Company, and ten to the Armstrong Transfer Company, during the term of the contract.

The trial judge* filed a memorandum of facts found by him, declined to make certain findings and rulings requested by the defendant, and in view of his findings and on all the evidence ruled that the plaintiff was entitled to a decree ordering the de-

* *Crosby*, J. The proceeding was a suit in equity in which the evidence was taken by a commissioner under Equity Rule 35.

fendant to pay the sum of $39,600 with interest thereon from the date of the filing of the bill. The report of the case to this court states: "The defendant desires to have the full court pass upon its exceptions to my rulings on points of evidence, and also desires to have the full court pass upon all the evidence in the case with a view to determining as to the correctness of my findings and rulings. In order that all these matters may be submitted to the court at one time, I now at the request of the defendant American Locomotive Company and with the consent of the parties, report the case and the questions of fact and law arising therein, it being intended hereby to present to the court all the questions that would be raised by a bill of exceptions and by an appeal after decree."

The only exceptions as to evidence now insisted upon by the defendant relate to the exclusion of a question to the witness Best, and the offer of proof made in connection therewith. These affect only the question of damages and admittedly are immaterial if the rule of damages adopted by the judge was correct. In view of our decision on that issue later, the exceptions as such need not be considered further.

On the merits of the case, the first contention of the defendant is that it was not intended by the parties that the word "automobiles" in said agreement should include taxicabs. There is strong support of this view in the evidence. Neither the defendant nor the American Locomotive Automobile Company had manufactured taxicabs commercially before the time when this contract was made. The conduct of the plaintiff's manager, Christopher F. Whitney, at the time of these sales, and his failure to assert a claim at an earlier date than he did, especially in view of the financial difficulties of the plaintiff and its indebtedness to the defendant, tend to show that he construed the contract as not covering these sales of taxicabs. On all the evidence the trial judge regarded this question as a close one and so stated.

The judge found as a fact, however, that "the word 'automobiles' as used in the agreement of January 1, 1908, includes taxicabs and was so understood and intended by the parties thereto." And his memorandum proceeds as follows:

"5. The evidence shows that the American Locomotive Au-

tomobile Company had not manufactured or sold taxicabs prior to the date of its contract with the plaintiff company, but that about the time said contract was entered into plans were under consideration and experiments made with a view to such manufacture and sale. During the year 1908, while said contract was in force, six taxicabs were sold to one Cummings about which a special arrangement was made and under which arrangement the plaintiff company was paid a commission of $100 on each taxicab so sold. I further find that while said agreement of January 1, 1908, was in force the American Locomotive Automobile Company sold and delivered in Boston fifty taxicabs to the Taxi-Service Company for $2,600 each, and ten taxicabs to the Armstrong Transfer Company for $2,600 each. I find that the list price of said taxicabs according to the price list furnished and promulgated by the American Locomotive Automobile Company was $3,350 each.

"6. I find that it was within the contemplation of the parties when the agreement of January 1, 1908, was entered into that taxicabs were included in the word 'automobiles,' although at the date of said contract no taxicabs had been manufactured by the American Locomotive Automobile Company. I find that Whitney, the manager of the Park Square Auto Station, began the negotiations with the representative of the Taxi-Service Company for the sale of taxicabs and took him to the defendants' factory in Providence, Rhode Island, and there conferred with the representatives and officers of the defendant company; that afterwards and during the term of the agreement of January 1, 1908, and while it was in force, said fifty taxicabs were sold by the American Locomotive Automobile Company to the Taxi-Service Company. I further find that Whitney, as manager of the plaintiff company, since said sales of said taxicabs to the Taxi-Service Company and to the Armstrong Transfer Company has repeatedly made requests to manager Joyce of the defendant company for payment of the commissions upon said sales, but that said Joyce never promised Whitney to pay the same or admitted to Whitney that such commissions were due or payable, and none of said commissions have ever been paid. I further find that after January 1, 1908, and while the contract of that date was in force, the defendant company sent out notices to agents who had contracts

with it similar to that which it had with the plaintiff company, stating in substance that no commissions would be allowed in the sale of taxicabs. I find, however, that no such notice was received by the plaintiff company, and that its officers or agents did not have knowledge of said notice."

By the long established rule these findings of fact made by the trial judge who saw and heard the witnesses must stand unless they are plainly wrong. *Dickinson* v. *Todd,* 172 Mass. 183. *Adams* v. *Protective Union Co.* 210 Mass. 172. And after an examination of the voluminous record, giving due weight to the great advantage possessed by the judge for forming opinions as to the credibility of witnesses and discovering the truth, we cannot say that he was clearly wrong. In the first place the words of the written contract, if doubtful, will be most strongly construed against the defendant, which prepared it under the direction of its general counsel. 9 Cyc. 590, and cases cited. The word "automobiles" ordinarily includes taxicabs; and when the defendant clearly intended to except them it expressly said so, as in the agreement with the plaintiff for 1910. Although the American Locomotive Automobile Company had not manufactured and sold taxicabs before the date of this contract, January 1, 1908, there was evidence that it then had plans under consideration and had made experiments with a view to such business; that in the fall of 1907 Whitney rode in one at the defendant's factory; that then or early in 1908 it had put into the hands of the Westcott Express Company in New York two cabs to test out; that a sale of cabs was made to the Seaich Company in February, 1908, and to one Cummings in the fall of that year. It further appeared that it was experimenting on taxicabs in 1907, some months before perfecting them; and that these cabs did not differ, except in a few particulars, from the town cars which had been manufactured and sold by it for some years previous to January, 1908. In view of these facts and other evidence in support of the plaintiff's contention on this issue, notwithstanding the evidence of the defendant to the contrary, we cannot say that the judge was plainly wrong in finding that the parties did intend to include taxicabs in the agreement.

The defendant next contends that the plaintiff is precluded from maintaining this action by the agreement of September 1,

1910, operating as an estoppel or amounting to an account stated. *Rand* v. *Wright,* 129 Mass. 50. It sought to get the benefit of these two defenses by the following requests for rulings: "4. If the officers of the Park Square Automobile Station, with knowledge of the fact that various taxicabs had been sold in the summer and fall of 1908, agreed on September 1, 1910, that the claim of the American Locomotive Company against the Park Square Automobile Station amounted to a certain figure and that the assets of said auto station included no claim against the American Locomotive Company, the plaintiff is not now entitled to recover. 5. If the American Locomotive Company executed the agreement of September 1, 1910, in reliance upon the fact that the statement of its accounts with the Park Square Automobile Station showed a large balance in its favor and that there was no such claim against it as is now asserted, the Park Square Automobile Station is estopped from now asserting the claim." In the memorandum the judge states, "The fourth request is refused because I find that Whitney as manager of the plaintiff company frequently requested of Joyce, the manager of the defendant company, payment of commissions on taxicabs so sold in 1908 while the contract of January 1, 1908, was in force, and that the manager of the defendant company had no reason to believe that said commissions had ever been waived or abandoned. The fifth request is refused because I find that the manager of the defendant company had knowledge (notwithstanding the statement of accounts between the plaintiff and the defendant company annexed to the agreement of September 1, 1910) of the claim of the plaintiff company for commissions on taxicabs, which claims the defendant company, acting by its manager, had no reason to believe had ever been waived or abandoned." These findings of fact are decisive against the defendant's contention, unless they are plainly wrong; and we cannot say that they are, as the findings are warranted by the testimony, especially that of Whitney, if believed.

In this connection it is important to consider the third finding of the judge: "I find that the Park Square Auto Station was not a party to the agreement dated September 1, 1910, and that the claims sought to be recovered in this suit were not assigned by virtue of said agreement and that the Park Square Auto Station

never had ratified or adopted said agreement." That instrument was executed only by the Dayton Motor Car Company and the Courier Car Company, called the Ohio companies, and the American Locomotive Company. At that time the Ohio companies had become the owners of all the shares of the plaintiff Park Square Auto Station, and it does not appear that they had any knowledge of the taxicab transactions that might bind the corporation. The instrument itself does not purport to be an account stated, and while it fixes definitely the liabilities of the plaintiff it contains no statement of the amount or character of its assets.

As to the defenses of waiver and laches the judge made the following findings: "7. I believe that while it was contemplated by the parties that taxicabs were included in the word 'automobiles,' the manager of the defendant company did not expect to be called upon to pay said commissions; but believed in view of the cordial and friendly relations which existed between himself and Whitney, the manager of the plaintiff company, that the latter would be induced to waive said commissions and not insist upon the same. . . . 9. While the evidence is conflicting and the question is not free from difficulty, I find that neither the Park Square Auto Station nor its agents or officers ever waived its right to such commissions, or expressly or impliedly agreed to waive the right to receive said commissions, although no attempt was made to collect the same before the bringing of this suit. 10. In view of the friendly relations of the parties and all the evidence in the case I find that the plaintiff company has not been guilty of laches in the enforcement of its claim against the defendant company." We cannot say that these are wrong. They are supported by the testimony of Whitney as to his talks with Vandyke, who was the defendant's assistant sales manager, with Hobby, its assistant treasurer, and especially with Joyce, the defendant's manager; and by that of the plaintiff's bookkeeper, Miss Stearns. It would serve no useful purpose to cite this testimony at length.

It remains to consider the question of damages. The sales in question were made in violation of the contract between the parties, which not only made the plaintiff exclusive agent for the territory where they were made, but by its express provisions

prohibited the defendant from selling its automobiles within that territory. *Garfield* v. *Peerless Motor Car Co.* 189 Mass. 395. The defendant in fact has made these sales, and is now precluded from raising the question whether the plaintiff, who introduced both of these customers, could have made the sales to them if the defendant had not done so. As between the plaintiff and the defendant the price of the cabs was expressly fixed at $3,350 each, except when some special arrangement was agreed upon, as was done when six taxicabs were sold to Cummings; and the defendant could not lawfully as against the plaintiff sell below that list price and thereby destroy the plaintiff's market. As the defendant saw fit to make these prohibited sales at a reduced price on its own responsibility, it must do so at its own expense, and cannot arbitrarily impose the consequences upon the plaintiff. It fairly could be inferred that the parties contemplated, as the measure of damages for a breach caused by the defendant's wrongful sale in the plaintiff's exclusive territory, the amount that the plaintiff would receive if the sale had been made by it. This standard was fixed by the contract itself, as a commission or discount of twenty per cent of the list price. *Marshall* v. *Canadian Cordage & Manuf. Co.* 160 Ill. App. 114. *Sparks* v. *Reliable Dayton Motor Car Co.* 85 Kans. 29. It was also recognized by the defendant in its dealings, according to some of the evidence in the case. It appears that when it sold an automobile in the plaintiff's territory it paid to the plaintiff a commission of twenty per cent on the list price. And as to taxicabs, the defendant's manager Joyce testified that when one was sold to an individual customer at the list price the agent would get the commission even under the later agency contracts that excluded commercial cabs. We cannot say, then, that the judge was wrong in adopting as the measure of the plaintiff's damages the usual commission on the list price of the taxicabs that were sold by the defendant, in violation of the contract.

As to the number of taxicabs so sold, there seems to be no dispute that ten were bought by the Armstrong Transfer Company in September, 1908. We find no evidence, however, that warrants a finding of the sale of more than forty-one cabs to the Taxi-Service Company during the period covered by the plaintiff's 1908 contract. The agreement of that company, dated August

11, 1908, * did not constitute a sale of taxicabs and did not oblige it to buy any. The fact that the plaintiff's manager was instrumental in bringing the parties together, and that the Taxi-Service Company bought many cabs from the defendant after the expiration of the plaintiff's contract, cannot avail the plaintiff in this proceeding. Consequently the plaintiff is entitled to twenty per cent on the price list ($3,350) of fifty-one taxicabs, less the sum of $10 on each one, which is the expense the plaintiff would have incurred if it had made the sales; and a decree is to be entered accordingly.

*So ordered.*

*R. G. Dodge, (F. W. Johnson* with him,) for the defendant American Locomotive Company.

*E. C. Stone, (G. F. Grimes* with him,) for the plaintiffs.

———

* This was a lease of certain taxicabs to the Taxi-Service Company for three months with an option to purchase the taxicabs at a certain price at any time during the term of the lease.