**SOCIETE MAROCAINE DES ESTABLISSEMENTS P. PARRENIN,**
Plaintiff,

v.

**GARDNER-DENVER COMPANY,**
Defendant.

United States District Court
S. D. New York.
Jan. 13, 1956

Dillon & O'Brien, New York City, for plaintiff, Thomas K. O'Brien and Arthur E. Sullivan, New York City, of counsel.

Burke & Burke, New York City, for defendant, Carl G. Schmiedeskamp, Quincy, Ill., James B. Burke and J. Frederic Taylor, New York City, of counsel.

WEINFELD, District Judge.

The plaintiff, a corporation of French Morocco, sues to recover damages charging that the defendant breached a written agreement under which it appointed the plaintiff its "exclusive distributor for the territory of French Morocco" for the sale of specified construction equipment manufactured by the defendant. The latter is a Delaware corporation with its principal place of business in Illinois.

The complaint alleges that the defendant in January and February, 1951 sold and delivered compressors and wagon drills "into plaintiff's said exclusive territory". The defendant does not dispute that the equipment in controversy was ultimately delivered into French Morocco. Nor does it deny that it sold the equipment in the United States to two of its domestic distributors. What defendant does dispute is that it personally sold the compressors and wagon drills for delivery into the plaintiff's exclusive territory, or that in selling the equipment to the two domestic distributors it knew, or had reason to know, that French Morocco was the ultimate destination of the merchandise. In sum, the defendant denies that it breached its agreement with the plaintiff.

The facts which give rise to the plaintiff's claim and which the evidence establishes are as follows: The defendant, to market its products in the United States, entered into exclusive agency arrangements with various independent distributors who were assigned general areas. Two of the domestic distributors were Casey & Emmert, Inc. of Chicago, Illinois, and J. W. Burress of Roanoke, Virginia. The former was assigned counties in Illinois and Indiana; the latter, the area specified as Southern Virginia. However, they were not restricted from selling in other areas. Thus in the instance of Casey & Emmert the distributorship agreement provides that it "may sell outside the exclusive territory unless circumstances would be embarrassing to the Gardner-Denver Company." Neither the plaintiff nor the domestic distributors were commission agents or brokers but on their own credit made direct purchases from the defendant at a stipulated discount and were free to sell the mer-

chandise so acquired at whatever price the market commanded.

In January, 1951 a construction firm known as Atlas Constructors placed three orders, two with Burress and one with Casey & Emmert, for the purchase of compressors and wagon drills, specifying those manufactured by the defendant. These orders were placed under the following circumstances: On January 3, 1951 Atlas entered into a cost-plus-a-fixed-fee contract with the Department of the Army to build air bases in North Africa. The contract was classified as "secret". Almost immediately thereafter, on January 12, 1951, Atlas to meet its equipment requirements under its cost-plus contract placed with Burress and Casey & Emmert the three orders referred to above. The orders specified that the shipments be made to "Atlas Constructors c/o District Engineer, * * * Tidewater Terminal, Port Newark, New Jersey, Emergency Shipment for Overseas." Burress and Casey & Emmert in turn each issued its own purchase orders to the defendant for the specified equipment. The defendant filled the orders and made shipment as instructed by its distributors to "Atlas Constructors, c/o District Engineer, * * * Tidewater Terminal, Port Newark, New Jersey, Emergency Shipment for Overseas." Title to the equipment upon its receipt at the Port of Newark vested, under the terms of the cost-plus contract, in the Government.[1] The merchandise was then transported on Government vessels by the Department of the Army to the Port of Casablanca in French Morocco and there delivered to the custody of Atlas for use in the construction of the air bases.[2] It is these deliveries which plaintiff claims constitute a breach of its agreement with the defendant and it seeks to recover as damages the profits realized upon the sale of the machinery to Atlas.

The contract between the parties provides that it shall be governed by the laws of the State of Illinois. Under Illinois law a manufacturer is liable for violation of an exclusive sales agency agreement where it is shown that he directly sold his goods into the distributor's exclusive territory. Where the sale is not made directly by him, he may also be held upon a showing that he had knowledge that the destination of the product sold by him to a third party was within the exclusive territory covered by the contract.[3]

It is not open to dispute that the defendant did not sell to Atlas Constructors, the purchaser through which the machinery was eventually delivered into French Morocco. The sales to Atlas were made by Burress and Casey & Emmert, who made the purchases from the defendant on their own credit.[4] Thus the defendant can be held only if it had knowledge that in filling the orders of its two distributors, the ultimate destination was French Morocco, the exclusive territory assigned to the plaintiff.

The evidence furnishes no basis for a finding that the defendant, or for that matter the domestic distributors, knew or should have known of the intended destination of the machinery. As we have noted, the contract between Atlas Constructors and the Army was secret;[5]

1. Under the agreement the contractor (Atlas Constructors) was to be reimbursed for all machinery and equipment and it was further provided that title thereto was to vest in the Government at such points as the contracting officer designated. (Article IV, 1a, 3a).

2. This information was revealed during the pretrial examination under permission of the District Engineer of the Army Corps of Engineers, pursuant to a limited declassification of the contract.

3. Marshall v. Canadian Cordage & Mfg. Co., 160 Ill.App. 114; see also Smith Furniture Co. v. Peter & Volz, 205 Ill. App. 379.

4. The defendant was paid by its distributors who later were paid by Atlas, who in turn were reimbursed by the Government under the cost-plus contract.

5. Cf. Godsol v. Nash Motors Co., 139 Md. 395, 115 A. 604, 606, the facts of which closely parallel the present situation.

in fact portions of it were declassified for the purposes of this suit. The plaintiff suggests that since the defendant, pursuant to shipping instructions received by it from its distributors, made shipment to, and its invoice stated, "Atlas Constructors, c/o District Engineer, * * * Port Newark," the defendant was put on notice of possible trans-shipment to French Morocco. But no facts have been submitted upon which a reasonable inference is warranted that such was the destination of the shipment or the defendant upon inquiry could have ascertained that fact. Just why it should have assumed that French Morocco rather than any other overseas port would be the place of ultimate delivery is not made clear.

But more important, the secret nature of the project and contract precluded the defendant and other persons from acquiring knowledge. The testimony of the procurement executive of Atlas that vendors such as Burress and Casey & Emmert were not advised at the time of the purchase the destination of the equipment, other than that they were destined 'for overseas shipment, was not challenged; and there is no basis for assuming that either Atlas or Army personnel violated security orders or regulations governing the shipment or the contract under which the orders were placed. Moreover, there is not a scintilla of evidence to establish any contact, direct or indirect, between Atlas and the defendant's officers.

 Apart from the failure to establish knowledge of the ultimate destination of the equipment, a further obstacle bars recovery by the plaintiff. It was not a broker or commission agent. Its contract with the manufacturer, the defendant, gave it the exclusive right to purchase and resell the defendant's goods in the designated area.[6] Under Illinois

law where there is a breach of such an exclusive sales agency agreement the plaintiff is entitled to damages only upon a showing that it could have or would have made the sales in question.[7] The record is completely barren of any evidence upon which to predicate a finding that the plaintiff could have or would have made the sale. Indeed the facts rather strongly negative any such suggestion.

The Government project was not only one of secrecy but also one of emergency. Atlas Constructors entered into the cost-plus contract with the Department of the Army on January 3, 1951. Almost immediately it invited bids from twelve vendors such as the defendant's distributors and orders were placed with Burress and Casey & Emmert on January 12th. As the testimony indicated, Atlas was not in a position to engage in deliberative purchasing; it was a matter of getting a supply of the required equipment as quickly as possible. The domestic suppliers who were invited to bid were selected on the basis of price and delivery. Since speed appeared to be essential, and the products sought were available in the domestic market, it would require a violent assumption to find that Atlas would have invited bids from the plaintiff, located as it was in French Morocco. Moreover, as a purchaser it had the right to buy its requirements in the domestic market and to trans-ship to wherever it required the use of the purchases. Parenthetically it is noted that under its contract the plaintiff agreed "diligently to solicit trade in the above described territory [French Morocco.]"

This disposition makes it unnecessary to consider the defendant's further contention that the sales come within the exception of the contract which excluded from its terms "All orders placed with

---

6. Marshall v. Canadian Cordage & Mfg. Co., 160 Ill.App. 114. Cf. Smyth Sales, Inc., v. Petroleum Heat & Power Co., 3 Cir., 128 F.2d 697, 700.

7. La Favorite Rubber Mfg. Co. v. H.

Channon Co., 113 Ill.App. 491, 493, 494, and cases there cited; see also Marshall v. Canadian Cordage & Mfg. Co., 160 Ill.App. 114, 119. Cf. R. S. Stokvis & Sons, Inc., v. Kearney & Trecker Corp., D.C.S.D.N.Y., 58 F.Supp. 260, 268.

the Manufacturer directly or indirectly through U. S. Government Channels or Agencies that may be subject to renegotiation * * *."

The defendant is entitled to judgment dismissing the complaint upon the merits.

The foregoing shall constitute the Court's findings of fact and conclusions of law. Either party may, within five days, propose further findings of fact or conclusions of law.

Judgment may enter accordingly.

