**KIRKHOF MANUFACTURING CORPO-RATION, a Michigan Corporation, Plaintiff-Appellee,**

v.

**SEM–TORQ, INC., an Ohio Corporation, Defendant-Appellant.**

No. 14928.

United States Court of Appeals
Sixth Circuit.

Jan. 30, 1963.

J. King Rosendale and William K. Tell, Jr., Cleveland, Ohio, McAfee, Hanning, Newcomer & Hazlett, J. King Rosendale, William K. Tell, Jr., Cleveland, Ohio, on the brief, for appellant.

Stanley M. Fisher, Cleveland, Ohio, Fuerst & Fisher, Stanley M. Fisher, Cleveland, Ohio, Williams & Damon, John E. Damon, Grand Rapids, Mich., on the brief, for appellee.

Before MILLER, WEICK and SMITH,* Circuit Judges.

J. JOSEPH SMITH, Circuit Judge.

Plaintiff, Kirkhof Manufacturing Corporation, a Michigan manufacturer of resistance welding transformers and allied equipment, entered in 1957 into an exclusive sales agency contract with defendant, Sem-Torq, Inc., originally known as Kirkhof of Ohio, Inc., an Ohio corporation formed for the purpose of selling and servicing plaintiff's products in Ohio. The contract was terminated by plaintiff under its provisions after two years. Plaintiff then brought action against defendant in the Northern District of Ohio for $11,862 due on an account. Defendant counterclaimed for commissions allegedly due it on sales by plaintiff of equipment delivered in Ohio. Defendant admitted the amount claimed due on the account and paid this into court. The District Court, Paul Jones, Judge, after trial to the court without jury entered judgment for the plaintiff for $11,862 plus interest, and denied and dismissed the defendant's counterclaim. From this judgment defendant appeals under 28 U. S.C. § 1291. We find no error and we affirm.

Involved in this appeal is defendant's claim for commissions of $17,484.06, consisting of 10% commission on the following sales by the plaintiff manufacturer through central purchasing departments of Ford and Chrysler, as to the circumstances of which there is no dispute in the testimony except as to two items totaling $470 paid for locally which the court found were actually ordered from Dearborn, Michigan rather than from Bedford, Ohio as indicated in the following deposition exhibits on page 3.

The contract in suit is set forth in full in Appendix A to this opinion. The particularly relevant provisions whose meaning is here in issue are as follows:

"*Commissions.* Manufacturer agrees to pay Representative a commission of Ten Per Cent (10%) of the net sales price on all sales of Manufacturer's products, except those manufactured within its Materials Handling Division, sold within said territory, except on the following sales: (a) Except on sales of resistance welding transformers, as hereinafter mentioned; (b) Except on sales to the following customers: [there follows a list of 6 customers]"

"*Discounts.* In lieu of any commission to be paid to Representative on the sale of resistance welding transformers, Manufacturer agrees to sell to Representative its resistance welding transformers at a discount of twenty per cent (20%) and ten per cent (10%) below list price; as set forth in the Manufacturer's transformer catalogue; *provided,* however, that Representative shall maintain for purposes of resale and distribution to customers, a stock of not less than fifty (50) * * * resistance welding transformers. * * * *"

---

* U. S. Circuit Judge, Second Circuit, sitting by designation.

The sales in question were made during the pendency of the contract by the manufacturer to the central purchasing departments of Ford and Chrysler for goods and services used in Ohio plants of those companies. The contract specifically provided that "Except as specified above, commissions will be paid on all sales in Representative's territory, whether such sales are negotiated by Representative or not" in the provision on "Commissions."

| Deposition Exhibit No. | Customer | Product | Amount | Origin of Purchase Order | Date of Purchase Order | Shipped to |
| --- | --- | --- | --- | --- | --- | --- |
| 11A, 11B, 11C | Chrysler | Transformers | $ 3,192.00 | Detroit, Michigan | 1/26/59 | Chrysler Corp. Ohio Stamping Plant Twinsburg, Ohio |
| 18, 19, 20 | Chrysler | Transformers | 199.50 | Detroit, Michigan | 1/26/59 | Chrysler Corp. Ohio Stamping Plant Twinsburg, Ohio |
| 21, 22, 23 | Chrysler | Transformers | 2,634.00 | Detroit, Michigan | 1/26/59 | Chrysler Corp. Ohio Stamping Plant Twinsburg, Ohio |
| 24, 25, 26 | Chrysler | Transformers | 810.00 | Detroit, Michigan | 6/12/59 | Chrysler Corp. Ohio Stamping Plant Twinsburg, Ohio |
| 41, 42, 43 | Ford | Special Welding Equipment | 72,170.00 | Dearborn, Michigan | 4/21/59 | Ford Cleveland Stamping Plant Walton Hills, Ohio |
| 46 | Ford | 2-Pressure Head | 160.00 | Bedford, Ohio | 6/5/59 | Ford Cleveland Stamping Plant Walton Hills, Ohio |
| 47A, 50, 56 | Ford | Special Welding Equipment | 16,100.00 | Dearborn, Michigan | 4/21/59 | Ford Cleveland Stamping Plant Walton Hills, Ohio |
| 57 | Ford | Power stand, 2-Pressure Head | 310.00 | Bedford, Ohio | 6/2/59 | Ford Cleveland Stamping Plant Walton Hills, Ohio |
| 62–70 | Ford | Gun Stations | 62,398.37 | Dearborn, Michigan | 8/1/58 | Ford Lorain Assembly Plant Lorain, Ohio |
| 99–105 | Ford | Transformer Conversions | 16,866.70 | Dearborn, Michigan | 5/15/58 | Ford Lorain Assembly Plant Lorain, Ohio |

The basic question is whether these particular transactions fall within the contract provision for commissions on "all sales in Representative's territory" as contended by defendant. The trial court considered testimony, both oral and by deposition, of the negotiations leading to the final form of the contract and in a memorandum opinion of October 24, 1961, adhered to in a second memorandum of November 27, 1961 on motion to amend judgment, determined that the transactions in suit did not fall within the contract provision and that no commission was due defendant.

Each party points to portions of the evidence supporting its interpretation of the contract. The six customers excepted from defendant's commissions by (4) (b) of the agreement consisted of Fisher Body, an old house account of plaintiff, The Federal Machine and Welder Company, Precision Welder and Flexopress Corporation and Taylor-Winfield Corporation, original equipment manufacturers (called O.E.M. accounts), Chrysler-Twinsburg Plant and Ford-Canton Forge Plant, the last two employing central purchasing from outside the state, with a proviso that they would be covered if they discontinued central purchasing and placed orders directly from their Twinsburg and Canton plants. The fact that these two were specifically mentioned and other plants employing central purchasing were not, as in the case of Ford Walton Hills and Ford Lorain, lends some color to defendant's claim that those employing central purchasing not mentioned were intended to be covered by the commission contract. Additionally, Ford-Canton Forge was later released from the exception. This argument is met, however, by the evidence that Twinsburg and Canton Forge were the only ones as to which there were rumors of possible abandonment of central purchasing, so that it was thought well to cover them specifically.

■■ Moreover, even if this provision be thought to weigh in defendant's favor, there was countervailing evidence before the court in determining the intent of the parties to the contract. The court adverted to the elimination in the final draft of the contract of wording suggested in an earlier draft by defendant which made commissions payable "on all items * * * sold by Kirkhof and delivered to the purchasers within such territory." A permissible inference from the elimination is that the parties rejected the proposal that the place of delivery was the place of sale. The court interpreted the "sales" referred to in the contract as taking place where the order was sent from, i. e., where the purchaser accepted the offer of the manufacturer to contract to sell the equipment at a stated price.[1] This is surely a permissible interpretation under the proof and findings here,[2] and in view of the opportunity of the trial court to pass on the credibility of the witnesses before it, we will not lightly upset its findings. Rule 52(a) F.R.Civ.P., 5 Moore Fed.Practice § 52.03, Beam v. State Farm Mutual Automobile Ins. Co., 269 F.2d 151 (6 Cir., 1959). It may be noted also that there concededly was no written protest over the failure of plaintiff to pay commissions on the sales in suit during the life of the contract or until plaintiff instituted action to collect defendant's delinquent account for purchases from plaintiff.

■ The interpretation is also consistent with Ohio and Michigan holdings in regard to quite similar contracts. The court sat in effect as a court of Ohio, and was bound under Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), to apply the law, including choice of law rules, Klaxon Co. v. Stentor, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), Goranson, Admr. v. Kloeb, 308 F.2d 655 (6 Cir., 1962), which Ohio courts would apply were the case before them. The parties make no point as to

---

1. It would make no difference here if the contract was complete only when the order was accepted by the manufacturer at Grand Rapids, Michigan.

2. See Corbin on Contracts § 78.

which law should be applied here, that of Ohio or that of Michigan. It does not appear where the contract in suit was finally made. Since performance was to be in Ohio, it is of course possible that an Ohio court would conclude that it should apply its own law. There does not appear to be any conflict, in any case, between Ohio and Michigan on the law. Compare Wyckoff, Seamans & Benedict v. Bishop, 115 Mich. 414, 73 N.W. 392 (1897) where the contract called for "commission on all sales" of typewriters in the territory and the court denied recovery of commission where the contract was made outside the territory and the typewriters were shipped by the buyer for use in its office in the territory, with Van Cleave v. Speedwell Motor Car Co., 17 Ohio N.P., N.S., 302 (Common Pleas 1914) where the contract called for the "exclusive right to sell" automobiles in the territory and the court denied commission on sales made outside the territory to purchasers who resided in the territory. Van Cleave indicates that the result might be different if a custom in the industry to the contrary were proven. No such custom has been proved here. We conclude that the court correctly interpreted the contract provision as to the place the "sales" took place.

■ As to the claim based on the transformer sales, there is also a sound alternate basis for the court's holding. On these transformer sales, the court found that the contract gives no right to commissions, the representative's profit to come solely from sales at the discount provided. This accords with the ordinary meaning of the provisions of both the commission and discount paragraphs of the contract, from which defendant seeks to escape on a claimed contrary interpretation by the parties in practice. It is undisputed that defendant never did stock the 50 transformers as provided in the contract, although the six month period expired, and that after the six months the plaintiff did pay commissions on a few transformer sales. However, the court apparently credited testimony that these payments were made outside the contract, to help defendant get started, without any intent to modify the contract as to exclusion of transformer sales from liability to payment of commission. We cannot say that a finding in accord with that evidence was clearly erroneous. Moreover, under the court's interpretation of "sales" in the contract, which we find proper, the transformer sales in suit were made outside the territory of defendant.

The judgment for the plaintiff, denying and dismissing defendant's counterclaim is affirmed.

### APPENDIX A

### SALES REPRESENTATION CONTRACT

KIRKHOF MANUFACTURING CORPORATION,
a Michigan corporation, of
Grand Rapids, Michigan,

"Manufacturer"

KIRKHOF OF OHIO, INC.,
an Ohio corporation, of
Cleveland, Ohio

"Representative"

THIS CONTRACT, Entered into August 13, 1957, between KIRKHOF MANUFACTURING CORPORATION, a Michigan corporation, of Grand Rapids, Michigan, (hereinafter called "Manufacturer") and KIRKHOF OF OHIO, INC., an Ohio corporation, of Cleveland, Ohio, (hereafter called "Representative");

### WITNESSETH:

WHEREAS, Fred Polster, Harold Polster and Joseph Seme have formed a corporation pursuant to the laws of the State of Ohio under the name of Kirkhof of Ohio, Inc., for the purpose of selling and distributing certain products of the Manufacturer throughout that State; and

WHEREAS, The Manufacturer desires the representation services of said corporation, for the purpose of so selling and distributing its products, except for those

products manufactured by its Materials Handling Division;

IT IS, THEREFORE, AGREED AS FOLLOWS:

(1) *Representation and Territory.* Manufacturing hereby grants to Representative the right to sell and distribute its products, except for those products manufactured by its Materials Handling Division, everywhere within the political boundaries of the State of Ohio.

(2) *Use of Name.* Manufacturer hereby authorizes and grants to Representative the use of the name "KIRKHOF OF OHIO, INC." for the purpose of carrying on the aforesaid business within said territory; this authorization and grant to be effective so long as this contract remains in full force and effect. Representative agrees that upon termination of this contract, for any reason whatsoever, it will cease and desist from using the name "KIRKHOF OF OHIO, INC." in any manner.

(3) *Service.* Representative hereby represents that Fred Polster, Harold Polster and Joseph Seme are its officers and directors, and agrees that it will employ them for the purpose of selling and distributing the Manufacturer's products throughout said territory. Representative agrees on behalf of itself, and on behalf of Fred Polster, Harold Polster and Joseph Seme, individually, to sell said products under the name "KIRKHOF MANUFACTURING CORPORATION" and to use its best efforts in so doing; and agrees further not to engage, in any manner, in the sale and distribution of any product competing with the Manufacturer's line.

Representative agrees to provide at its own expense the technical assistance and personnel service required for the installation of the products sold in its territory. Manufacturer agrees to cooperate therein by furnishing such additional service personnel as may be needed in special cases to assist with equipment installations.

Representative agrees not to employ any salesmen or other persons except under written contract, by the terms of which the Manufacturer shall be released from all liability for any indebtedness from Representative to such salesmen or other persons.

It is understood and agreed that Representative shall at all times be deemed to be an independent contractor hereunder. Within said territory, Representative shall be free to exercise its own judgment as to the persons from whom it will solicit orders and the manner, time and place of solicitation. Representative may employ such persons and in such numbers as it deems requisite to properly effectuate its corporate purposes and the terms of this contract, and shall apply the time and services of its employees as its officers and directors shall determine. Manufacturer shall have no right to control Representative in the conduct of its activities so long as this contract is performed and fulfilled.

(4) *Commissions.* Manufacturer agrees to pay Representative a commission of Ten Per Cent (10%) of the net sales price on all sales of Manufacturer's products, except those manufactured by its Materials Handling Division, sold within said territory, except on the following sales:

(a) Except on sales of resistance welding transformers, as hereinafter mentioned;

(b) Except on sales to the following customers:

All Fisher Body Divisions of General Motors Corporation
Chrysler-Twinsburg Plant
The Federal Machine & Welder Company
Ford-Canton Forge Plant
Precision Welder and Flexopress Corporation
Taylor-Winfield Corporation

*Provided,* however, that the above mentioned Chrysler-Twinsburg Plant and Ford-Canton Forge Plant shall become a part of this Sales Representation Contract and Representative shall be entitled to commissions on sales made thereto

from and after such time as said Chrysler-Twinsburg Plant and Ford-Canton Forge Plant discontinue centralized purchasing and place orders directly from their Twinsburg and Canton plants.

(c) Except on sales to special jobs quoted and obtained under lower than normal profit margins and/or for larger than normal installations, in which events a lesser commission shall be paid by Manufacturer to Representative, said lesser commission to be determined by the mutual agreement of the parties.

The net sales price shall be the sales price as invoiced by Manufacturer to the customer, exclusive of freight handling charges and any other charges not pertinent to said purchase order. All commissions shall be paid by Manufacturer to Representative within thirty (30) days after payment of the invoice by the customer. Except as specified above, commissions will be paid on all sales in Representative's territory, whether such sales are negotiated by Representative or not.

(5) *Discounts.* In lieu of any commission to be paid to Representative on the sale of resistance welding transformers, Manufacturer agrees to sell to Representative its resistance welding transformers, at a discount of twenty per cent (20%) and ten per cent (10%) below list price, as set forth in the Manufacturer's transformer catalogue; *provided,* however, that Representative shall maintain, for purposes of resale and distribution to customers, a stock of not less than fifty (50) standard Kirkhof hipersil resistance welding transformers, the types and sizes to be dependent upon the customer demand.

In order to allow ample time for determining the various types and sizes of said transformers to place in stock, Representative shall have a period of six (6) months from and after the date of this contract within which to make its initial purchases and to bring its stock of said transformers up to the aforementioned requirements.

Manufacturer reserves the right to revise the list prices as shown in said transformer catalogue, as may be required from time to time; said list price revision to become effective upon giving Representative sixty (60) days' written notice thereof by registered mail, with return receipt requested.

In the event this contract is terminated by Manufacturer, as hereinafter provided, Manufacturer agrees to repurchase all resistance welding transformers then held in stock by Representative at the price originally paid therefor.

(6) *General Provisions.* All sales of Manufacturer's products, other than transformers held in stock by Representative, shall be subject to prior approval by Manufacturer.

All orders shall be in writing, and shall be effective only when accepted by Manufacturer.

All billings, except as to transformers held in stock by Representative, shall be made by Manufacturer direct to the customer.

All prices shall be f.o.b. the Manufacturer's plant floor in Grand Rapids, Michigan.

In the event a customer shall return products of the Manufacturer, for which the purchase price shall be refunded to such customer, no commissions thereon shall be payable to Representative, or if a commission thereon has already been paid to Representative, the same shall be refunded to the Manufacturer by the Representative.

(7) *Termination.* This contract shall run for a period of one (1) year commencing on................, 1957, and thereafter on a yearly basis.

This contract may be terminated by either party at the end of any contract year by giving written notice thereof on or before sixty (60) days prior to the close of such contract year by registered mail with return receipt requested, or by delivering the same personally to the other party.